**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA**

|  |  |
|---|---|
| LINDA JAMES, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> GC SERVICES LIMITED PARTNERSHIP, ) <br> DLS ENTERPRISES, INC, and ) <br> GC FINANCIAL CORP., ) <br> ) <br> Defendants. ) <br> _____) | Civil Action No. 3:12-965-CMC <br><br> **ORIGINAL CLASS ACTION** <br> **COMPLAINT** <br><br><br><br> **JURY TRIAL DEMAND** |

## NATURE OF ACTION

1. This is an action brought under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*.

## JURISDICTION AND VENUE

2. This Court has jurisdiction under 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

3. Venue is proper before this Court pursuant to 28 U.S.C. §1391(b), where the acts and transactions giving rise to Plaintiff's action occurred in this State and this district, where Plaintiff resides in this State and district, and where Defendants transact business in this State and this district.

## PARTIES

4. Plaintiff Linda James ("Plaintiff") is a natural person who at all relevant times resided in the State of South Carolina, County of Richland, and City of Columbia.

5. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3).

6. Defendant GC Services Limited Partnership ("GC Services") is a foreign limited partnership formed under the laws of Delaware. GC Services is registered to do, and doing,

1

business in this district. GC Services' principal office and place of business is situated at 6330 Gulfton St., Houston, TX 77081-1108. GC Services may be served by and through its registered agent, CT Corporation 350 N. St. Paul St., Ste. 2900, Dallas, TX 75201-4234.

7. GC Services is the largest private collection agency in North America, operating thirty-six (36) offices, employing more than 10,000 individuals, and managing over 8.5 million open third-party debt collection accounts.

8. GC Services is an entity that at all relevant times was engaged, by use of the mails and telephone, in the business of attempting to collect a "debt" from Plaintiff, as defined by 15 U.S.C. §1692a(5).

9. Defendant GC Financial Corp. ("GC Financial") is a foreign for-profit corporation and the general partner of GC Services Limited Partnership. GC Financial is registered to do, and doing, business in this district. GC Financial's principal office and principal place of business is situated at 6330 Gulfton St., Houston, TX 77081. GC Financial may be served by and through its registered agent, CT Corporation 350 N. St. Paul St., Ste. 2900, Dallas, TX 75201-4234.

10. Defendant DLS Enterprises, Inc. ("DLS"), doing business under the assumed fictitious name GC Services Corp., is a foreign for-profit corporation and the general partner of GC Services. DLS is registered to do, and doing, business in this district. DLS's principal place of business and principal office is situated at 6330 Gulfton St., Houston, TX 77081. DLS may be served by and through its registered agent, CT Corporation 350 N. St. Paul St., Ste. 2900, Dallas, TX 75201-4234.

11. By virtue of their status as "debt colletor[s]" under the FDCPA, GC Financial and DLS are each separately liable for GC Services' violations of the FDCPA. *Strasters v. Weinstein*

*& Riley, P.S.*, 2011 WL 3320583, at *3 (E.D. Wash. Aug. 2, 2011) ("Of the cases addressing the issue, most find that multiple defendants are each separately, rather than joint and severally, liable for [statutory damages of up to $1,000]."); *Jones v. Investment Retrievers*, LLC, No. 3:10-CV-1714, 2011 WL 1565851, at *8 (M.D. Pa. Apr. 25, 2011) ("[T]he plaintiff is limited to $1,000 per defendant per filed action, for a total of $2,000 in the present action. . . . The clear language of this provision requires that a maximum of $1,000 may be awarded against any debt collector in an action."); *Gamboa v. Carruthers*, No. 8:10-cv-1473-T-24-MAP, 2010 WL 4823671, at *1 (M.D. Fla. Nov. 19, 2010) ("Accordingly, Plaintiff is awarded the maximum damages of $1,000 per defendant under each statute for a total of $2,000 per defendant."); *Ganske v. Checkrite, Ltd.*, No. 96-C-0541-S, 1997 WL 33810208, at *5 (W.D. Wis. Jan. 6, 1997) ("statutory damages pursuant to § 1692k(a) may be imposed against more than one defendant in a single proceeding").

12.     Accordingly, GC Services, GC Financial, and DLS are "debt collectors" as defined by 15 U.S.C. § 1692a(6).

## FACTUAL ALLEGATIONS

13.     Plaintiff is a natural person obligated, or allegedly obligated, to pay a debt owed or due, or asserted to be owed or due a creditor other than GC Services.

14.     Plaintiff's obligation, or alleged obligation, owed or due, or asserted to be owed or due a creditor other than GC Services, arises from a transaction in which the money, property, insurance, or services that are the subject of the transaction were incurred primarily for personal, family, or household purposes.

15.     Plaintiff's alleged obligation arises from a personal student loan allegedly owed by Plaintiff.

16. In connection with collection of the alleged debt in default, GC Services called Plaintiff's cellular telephone on October 10, 2011 at 11:29 A.M., and at such time, left the following message:

> Hi Linda Perry, my name is Adrian. It is important that you return my call today. My number here is 855-877-7995 my extension is 3005.

17. Plaintiff had previously spoken with GC Services' agents and/or employees "Mr. Hazard" and "Mrs. Morris," but had never spoken with an agent and/or employee of GC Services whom identified himself as "Adrian."

18. In its voicemail message of October 10, 2011, GC Services failed to notify Plaintiff that the communication was from a debt collector.

19. In its voicemail message of October 10, 2011, GC Services failed to disclose its true corporate or business name in a telephone call to Plaintiff.

20. GC Services called Plaintiff's cellular telephone on October 11, 2011 at 2:19 P.M., and at such time, left the following message:

> Hi Linda Perry my name is Adrian. It is important that you return my call to my office today. My number here is 855-877-7995 my extension is 3005. It is important you do return a call to my office. I will be here until 5 o'clock eastern time.

21. In its voicemail message of October 11, 2011, GC Services failed to notify Plaintiff that the communication was from a debt collector.

22. In its voicemail message of October 11, 2011, GC Services failed to disclose its true corporate or business name in a telephone call to Plaintiff.

23. In its voicemail message of October 11, 2011, GC Services conveyed a false sense of urgency with regard to said call for the purpose of compelling Plaintiff to communicate with a debt collector.

24. GC Services called Plaintiff's cellular telephone on October 19, 2011 at 6:02 P.M., and at such time, left the following message:

> Hi, Miss Perry, my name is Adrian. Please return a phone call to my office today. My number is 855-877-7995, my extension is 3005. I will be in my office tonight until 9:00 o'clock P.M. Eastern Time. It is important you do return my call. Thank you.

25. In its voicemail message of October 19, 2011, GC Services failed to notify Plaintiff that the communication was from a debt collector.

26. In its voicemail message of October 19, 2011, GC Services failed to disclose its true corporate or business name in a telephone call to Plaintiff.

27. In its voicemail message of October 19, 2011, GC Services conveyed a false sense of urgency with regard to said call for the purpose of compelling Plaintiff to communicate with a debt collector.

28. GC Services called Plaintiff's cellular telephone on October 24, 2011 at 10:45 A.M., and at such time, left the following message:

> Hi Linda Perry, this is Adrian. It is important you return a call to my office today. My number here 855-877-7995, my extension 3005. It is important you do return my call today. Thank you.

29. In its voicemail message of October 24, 2011, GC Services failed to notify Plaintiff that the communication was from a debt collector.

30. In its voicemail message of October 24, 2011, GC Services failed to disclose its true corporate or business name in a telephone call to Plaintiff.

31. In its voicemail message of October 24, 2011, GC Services conveyed a false sense of urgency with regard to said call for the purpose of compelling Plaintiff to communicate with a debt collector.

32. GC Services, as a matter of pattern and practice, leaves, or causes to be left, voice messages/voice recordings with and/or for alleged debtors using language substantially similar or materially identical to that utilized by GC Services in leaving, or causing to be left, the above-described voice messages/voice recordings with and/or for Plaintiff, in that the same fail to notify the consumer that the communication is from a debt collector.

33. GC Services, as a matter of pattern and practice, leaves, or causes to be left, voice messages/voice recordings with and/or for alleged debtors using language substantially similar or materially identical to that utilized by GC Services in leaving, or causing to be left, the above-described voice messages/voice recordings with and/or for Plaintiff, in that the same fail to disclose GC Services' true corporate or business name

34. GC Services, as a matter of pattern and practice, leaves, or causes to be left, voice messages/voice recordings with and/or for alleged debtors using language substantially similar or materially identical to that utilized by GC Services in leaving, or causing to be left, the above-described voice messages/voice recordings with and/or for Plaintiff, in that the same convey a false sense of urgency with regard to said call for the purpose of compelling the consumer to communicate with a debt collector.

35. GC Services directs its employees not to disclose in a voice message left for a consumer-debtor that they are debt collectors, where an answering machine or voicemail does not definitively identify the consumer-debtor.

36. GC Services' policy on voicemail machine messages is that if the individual collector has not identified the debtor at that phone number, the individual collector is to only leave a message stating the individual collector's name and requesting the consumer return the call.

6

37. Unless a GC Services' employee knows for a fact and has talked to the consumer at that number or in the answering machine message it identifies the consumer, a GC Services' employee is prohibited from stating in a voicemail that he or she is a debt collector.

## CLASS ALLEGATIONS

38. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 34.

39. Plaintiff brings this action on behalf of herself and all others similarly situated. Specifically, Plaintiff seeks to represent a class of individuals defined as:

> All persons located in South Carolina, who, within one year before the date of this complaint, received a voice message/voice recording from GC Services in connection with an attempt to collect any consumer debt, where the voice message was substantially similar or materially identical to the standardized messages delivered to Plaintiff in that the voice message/voice recording failed to disclose that the communication was from a debt collector, identify GC Services' true corporate or business name, and/or conveyed a false sense of urgency.

40. The proposed class specifically excludes The United States of America, the State of South Carolina, counsel for the parties, the presiding United States District Court Judge, the Judges of The United States Court of Appeals for the Fourth Circuit and the Justices of The United States Supreme Court, all officers and agents of GC Services, GC Financial, and DLS, and all persons related to within the third degree of consanguinity or affection to any of the foregoing individuals.

41. The class is averred to be so numerous that joinder of members is impracticable.

42. Debt collectors employed by GC Services place 100 to 500 telephone calls per day in connection with GC Services' debt collection efforts. GC Services' quality observation

analysts evaluate more than 100,000 customer contacts monthly. GC Services handles approximately 20 million calls per month.

43. The exact number of class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery.

44. GC Services documents its collection efforts with respect to every account that it maintains.  GC Services' collection efforts are memorialized in an account detail listing that includes, among other records, notes about conversations with consumer-debtors, skip-tracing notes, and notes regarding conversations with third parties.

45. GC Services' employees enter details of their collection efforts into an account detail listing with knowledge of the transaction and at or near the time of its execution. It is GC Services policy and procedure to document each and every collection effort made on an account. The Detail Listing reflects all substantive communications between the employees of GC Services and consumer-debtors regarding debt collection.

46. GC Services' employees document in respective account detail listings each occasion on which they leave a voice message for a consumer-debtor.

47. GC Services' employees include a notation in account detail listings when leaving a message for a consumer-debtor that informs the consumer-debtor that the employee is a debt collector calling from GC Services.

48. The class is ascertainable in that the names and addresses of all class members can be identified in business records maintained by GC Services.

49. Respective account detail listings are kept by GC Services in the regular course of business.

50. All account detail listings exist in electronic format. Via the mainframe computer located at its Houston General Office, GC Services can dial into computer systems across the country, which are utilized by its employees to add collection notes to respective account detail listings, to access the collection notes entered into respective account detail listings.

51. There exists a well-defined community of interest in the questions of law and fact involved that affect the parties to be represented. These common questions of law and fact predominate over questions that may affect individual class members. Such issues include, but are not limited to: (a) The existence of GC Services' identical conduct particular to the matters at issue; (b) GC Services' violations of 15 U.S.C. §1692 *et. seq.*; (c) The availability of statutory penalties; and (d) Attorneys' fees and costs.

52. The claims of Plaintiff are typical of those of the class she seeks to represent.

53. The claims of Plaintiff and of the class originate from the same conduct, practice, and procedure, on the part of GC Services. Thus, if brought and prosecuted individually, the claims of each class member would require proof of the same material and substantive facts.

54. Plaintiff possesses the same interests and has suffered the same injuries as each class member. Plaintiff asserts identical claims and seeks identical relief on behalf of the unnamed class members.

55. Plaintiff will fairly and adequately protect the interests of the class and has no interest adverse to or which directly and irrevocably conflicts with the interests of other members of the class.

56. Plaintiff is willing and prepared to serve this Court and proposed class.

57. The interests of Plaintiff are co-extensive with and not antagonistic to those of the absent class members.

58. Plaintiff has retained the services of counsel who are experienced in consumer protection claims, as well as complex class action litigation, will adequately prosecute this action, and will assert, protect and otherwise represent Plaintiff and all absent class members.

59. Class certification is appropriate under Fed. R. Civ. P. 23(b)(1)(A) and 23(b)(1)(B). The prosecution of separate actions by individual members of the class(es) would, as a practical matter, be dispositive of the interests of other members of the class(es) who are not parties to the action or could substantially impair or impede their ability to protect their interests.

60. The prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class, which would establish incompatible standards of conduct for the parties opposing the class. Such incompatible standards of conduct and varying adjudications, on what would necessarily be the same essential facts, proof and legal theories, would also create and allow the existence of inconsistent and incompatible rights within the class.

61. Class certification is appropriate under Fed. R. Civ. P. 23(b)(2) in that GC Services has acted or refused to act on grounds generally applicable to the class(es), making final declaratory or injunctive relief appropriate.

62. Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) in that the questions of law and fact that are common to members of the class(es) predominate over any questions affecting only individual members.

63. Moreover, a class action is superior to other methods for the fair and efficient adjudication of the controversies raised in this Complaint in that: (a) individual claims by the class members will be impracticable as the costs of pursuit would far exceed what any one plaintiff or class member has at stake; (b) as a result, very little litigation has been commenced

10

over the controversies alleged in this Complaint and individual members are unlikely to have interest in prosecuting and controlling separate individual actions; (c) the concentration of litigation of these claims in one forum will achieve efficiency and promote judicial economy.

### COUNT I: VIOLATION OF FAIR DEBT COLLECTION PRACTICES ACT § 1692d(6)

64.     Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 60.

65.     15 U.S.C. § 1692d(6) provides:

> A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> *       *       *
>
> (6) Except as provided in section 1692b of this title, the placement of telephone calls without meaningful disclosure of the caller's identity.

15 U.S.C. § 1692d(6).

66.     "Meaningful disclosure" requires that the caller state his or her name and capacity, and disclose enough information so as not to mislead the recipient as to the purpose of the call. *Hosseinzadeh v. M.R.S. Associates, Inc.*, 387 F. Supp. 2d 1104, 1115 (C.D. Cal. 2005); *Costa v. National Action Financial Services,* 634 F. Supp. 2d 1069 (E.D. Cal. 2007).

67.     A debt collector fails to meet the standards prescribed by 15 U.S.C. § 1692d(6) where it fails "to disclose that the caller was a debt collector and that the purpose of the call was to collect a debt." *Koby v. ARS Nat. Services, Inc*., 2010 WL 1438763 *5 (S.D. Cal. 2010).

11

68. "15 U.S.C. 1692d(6) applies 'equally to automated message calls and live calls.'" *Hosseinzadeh,* 387 F. Supp. 2d at 1115 (C.D. Cal. 2005), citing *Joseph v. J.J. Mac Intyre Cos.*, 238 F. Supp. 2d 1158 (N.D. Cal. 2002).

69. GC Services violated 15 U.S.C. § 1692d(6) by failing to disclose its true corporate and/or business name in voicemail messages left for Plaintiff.

70. GC Financial and DLS are each separately liable for the acts of GC Services.

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

a) Determining that this action is a proper class action, certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating this Complaint the operable complaint for class purposes;

b) Adjudging that GC Services violated 15 U.S.C. § 1692d(6);

c) Adjudging that GC Financial and DLS are each separately liable for the acts of GC Services;

d) Awarding Plaintiff, and all those similarly situated, statutory damages, pursuant to 15 U.S.C. §1692k, in the amount of $1,000.00 per class member per Defendant;

e) Awarding Plaintiff, and all those similarly situated, reasonable attorneys' fees ands costs incurred in this action, including Counsel fees and expert fees;

f) Awarding Plaintiff, and all those similarly situated, any pre-judgment and post-judgment interest as may be allowed under the law;

g) Awarding such other and further relief as the Court may deem just and proper.

## COUNT II: VIOLATION OF FAIR DEBT COLLECTION PRACTICES ACT § 1692e(11)

71.     Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 60.

72.     15 U.S.C. § 1692e(11) provides:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following Conduct is a violation of this section:
>
> \*     \*     \*
>
> (11) The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.

15 U.S.C. § 1692e(11).

73.     Voice mail messages from debt collectors to debtors are "communications" regardless of whether a debt is mentioned in the message. *Berg v. Merchants Assoc. Collection Div., Inc.,* 586 F. Supp. 2d 1336 (S.D. Fla. 2008), *citing Belin v. Litton Loan Servicing, LP,* 2006 WL 1992410 *4 (M.D. Fla. 2006) (holding that messages left on debtor's answering machines were "communications" under the FDCPA); *Hosseinzadeh*, 387 F. Supp. 2d at 1115-16 (holding that a voice mail message is a "communication" under the FDCPA).

74.     GC Services violated 15 U.S.C. § 1692e(11) by failing to disclose during a communication with Plaintiff that the communication was from a debt collector.

75.     GC Financial and DLS are each separately liable for the acts of GC Services.

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

a) Determining that this action is a proper class action, certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating this Complaint the operable complaint for class purposes;

b) Adjudging that GC Services violated 15 U.S.C. § 1692e(11);

c) Adjudging that GC Financial and DLS are each separately liable for the acts of GC Services;

d) Awarding Plaintiff, and all those similarly situated, statutory damages, pursuant to 15 U.S.C. §1692k, in the amount of $1,000.00 per class member per Defendant;

e) Awarding Plaintiff, and all those similarly situated, reasonable attorneys' fees ands costs incurred in this action, including counsel fees and expert fees;

f) Awarding Plaintiff, and all those similarly situated, any pre-judgment and post-judgment interest as may be allowed under the law;

g) Awarding such other and further relief as the Court may deem just and proper.

### COUNT III: VIOLATION OF FAIR DEBT COLLECTION PRACTICES ACT § 1692e(10)

73. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 60.

74. 15 U.S.C. § 1692e(10) provides:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> \*     \*     \*

14

>  (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

15 U.S.C. § 1692e(10).

75.    "It is a violation to send any communication that conveys to the consumer a false sense of urgency." *Leyse v. Corporate Collection Services, Inc*., 2006 WL 2708451 (S.D. N.Y. 2006) (citing Federal Trade Commission Staff Commentary 53 Fed.Reg. 50097-02 (1988)); *see also Romine v. Diversitied Collection Servs*., 155 F. 3d 1142, 1143 (9th Cir. 1998) (holding that a debt collector violates 15 U.S.C. § 1692e(10) by creating a false sense of urgency).

76.    GC Services violated 15 U.S.C. § 1692e(10) by leaving Plaintiff a voice message/voice recording conveying a false sense of urgency and vague enough to provoke a recipient to return the call in haste, but which would deceptively entice a consumer to communicate with a debt collector.

77.    GC Financial and DLS are each separately liable for the acts of GC Services.

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

a) Determining that this action is a proper class action, certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating this Complaint the operable complaint for class purposes;

b) Adjudging that GC Services violated 15 U.S.C. § 1692e(10);

c) Adjudging that GC Financial and DLS are each separately liable for the acts of GC Services;

d) Awarding Plaintiff, and all those similarly situated, statutory damages, pursuant to 15 U.S.C. §1692k, in the amount of $1,000.00 per class member per Defendant;

15

e) Awarding Plaintiff, and all those similarly situated, reasonable attorneys' fees ands costs incurred in this action, including counsel fees and expert fees;

f) Awarding Plaintiff, and all those similarly situated, any pre-judgment and post-judgment interest as may be allowed under the law;

g) Awarding such other and further relief as the Court may deem just and proper.

## TRIAL BY JURY

78. Plaintiff is entitled to and hereby demands a trial by jury on all counts.

DATED this 5th day of April, 2012.

Respectfully submitted,

/s/ Holly E. Dowd
Holly E. Dowd (S.C. Bar No. 77897)
Weisberg & Meyers, LLC
409A Wakefield Dr.
Charlotte, NC 28209
(888) 595-9111 ext. 260
(866) 565-1327 (fax)
hdowd@attorneysforconsumers.com
ATTORNEYS FOR PLAINTIFF

*Please send correspondence to the address below*

Holly E. Dowd
*Weisberg & Meyers, LLC*
5025 N. Central Ave. #602
Phoenix, AZ 85012